UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

CHANA ADATO and CHAIM ADATO,

                Plaintiffs,

                                   **MEMORANDUM & ORDER**

        -against-                    07-CV-4029 (KAM)

GALA TOUR, INC., MGV EXPRESS BUS CO.
INC., ALEX DUBIGNIN and DISCOVER
AMERICA, LLC,

                Defendants.

---------------------------------------X

**MATSUMOTO, United States District Judge:**

       Plaintiffs Chana Adato ("Mrs. Adato") and Chaim Adato
("Mr. Adato") bring this action against Gala Tour, Inc.
("Gala"), MGV Express Bus Co. Inc. ("MGV"), Alex Dubignin
("Dubignin"), an employee and bus driver of MGV, and Discover
America, LLC ("Discover") (collectively, "defendants"), alleging
that defendants' negligence "in the ownership, operation,
maintenance, management, control, repair, installation, and use"
of a tour bus caused plaintiff to sustain permanent and serious
injuries. (ECF No. 67, Ex. A, Complaint dated July 23, 2007
("Compl.") at ¶¶ 21-22.)

       Defendants MGV and Dubignin timely removed the action
to federal court on the basis of diversity jurisdiction. (ECF
No. 1, Notice of Removal, dated Sept. 26, 2007; ECF No. 67, Ex.

1

C, Civil Cover Sheet, dated Sept. 26, 2007.)  Mr. Adato joined

the suit, alleging loss of consortium, on January 5, 2010.  (ECF

No. 42, Memorandum and Order, dated January 5, 2010.)

Presently before the court are defendants' motions for

summary judgment seeking dismissal of plaintiffs' actions

pursuant to Federal Rule of Civil Procedure 56(b).  (ECF No. 67,

MGV's and Dubignin's Notice of Motion for Summary Judgment,

dated Oct. 20, 2010; ECF No. 67-2, Memorandum of Law in Support

of Defendants' Motion for Summary Judgment ("MGV Mem."); ECF No.

71, Defendant Discover America's Notice of Motion for Summary

Judgment ("Discover Mem."), dated Oct. 20, 2010; ECF No. 72,

Defendant Discover America's Affirmation in Support of Motion

for Summary Judgment ("Discover Aff."), dated Dec. 21, 2010.)

Defendants MGV and Dubignin argue that summary judgment is

appropriate because plaintiffs are unable to establish

negligence on the part of MGV and Dubignin.  (*See* MGV Mem.)

Defendant Discover argues that summary judgment should be

granted because (1) plaintiffs have failed to establish a *prima

facie* case of liability against Discover, and (2) even if

plaintiffs could prove a *prima facie* case of negligence,

Discover cannot be held liable because it did not control the

bus.  (*See* Discover Mem.)

Plaintiffs oppose defendants' motions for summary

judgment and cross-move for an order imposing an adverse

inference due to alleged spoliation of relevant evidence by defendant MGV pursuant to Federal Rule of Civil Procedure 37. (ECF No. 69-2, Memorandum of Law in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment & Plaintiffs [sic] Cross Motion as to Spoliation ("Pl. Opp. MGV"); ECF No. 69-4, Memorandum of Law in Support of Plaintiff's Opposition to Defendant Discover America Motion for Summary Judgment ("Pl. Opp. Discover").)  For the reasons set forth below, defendants' motions for summary judgment are granted, and plaintiffs' cross-motion for an adverse inference due to spoliation is denied.

## FACTUAL BACKGROUND

The following facts, taken from the parties' statements pursuant to Local Civil Rule 56.1, are undisputed unless otherwise indicated.  The court has considered whether the parties have proffered admissible evidence in support of their positions and has viewed the facts in a light most favorable to the nonmoving plaintiffs.

On October 26, 2006, plaintiff Chana Adato and her husband, plaintiff Chaim Adato, both Israeli citizens, were passengers on a tour bus provided by defendant MGV and driven by defendant Dubignin, who at all relevant times was an employee of MGV.  (ECF No. 67, Defendants' Local Rule 56.1(a) Statement of Material Facts in Support of Motion for Summary Judgment ("MGV

56.1 Stmt.") at ¶¶ 1-2; ECF No. 69, Plaintiffs' Local Rule 56.1(A) Counterstatement of Material Facts in Opposition to Defendant's [sic] MGV Express Bus Motion for Summary Judgment ("Pl. 56.1 Stmt.") at ¶¶ 1-2; ECF No. 67, Ex. J, Deposition of Alexey Dubignin on Nov. 12, 2009 ("Dubignin Dep.") at 7, 34). The tour, arranged by defendant Discover, was led by Ilan Livneh ("Livneh" or "tour guide"), an employee of Discover. (ECF No. 67, Ex. I, Deposition of Ilan Livneh on July 17, 2009 ("Livneh Dep.") at 16.) Defendants Gala, MGV, and Discover were at all relevant times domestic corporations incorporated in the State of New York. (Compl. at ¶¶ 2-3.) The tour bus was a 36-passenger bus and was not at full capacity. (Livneh Dep. at 19; ECF No. 67, Ex. G, Deposition of Chana Adato on Sept. 30, 2009 ("Chana Adato Dep.") at 70; Dubignin Dep. at 47.) The bus was in good working order when Dubignin inspected it prior to embarking on the trip. (Dubignin Dep. at 36.)

At the time of the alleged incident, the tour bus was traveling from Hershey, Pennsylvania to Lancaster, Pennsylvania. (MGV 56.1 Stmt. at ¶ 2; Pl. 56.1 Stmt. at ¶ 2). Livneh was familiar with the route of the tour, as he had led tours of the same itinerary twenty times in 2006. (Livneh Dep. at 17.) Dubignin was also familiar with the itinerary. (Dubignin Dep. at 43-44.) On this particular section of the tour, Livneh usually chose at random different local roads to take from a

map, in order to show the tour group the "lives of the Amish farms." (Livneh Dep. at 17.) Livneh would then tell the driver where to turn and what specific roads to take. (*Id.*)

On the day of the alleged incident, the weather was sunny and road conditions were normal. (Chana Adato Dep. at 55-56; Dubignin Dep. at 47-48.) None of the parties or witnesses could name the road the bus was traveling on, but Livneh and Dubignin testified that the bus was traveling on a paved two-lane road, with one lane in each direction. (Livneh Dep. at 55; Dubignin Dep. at 54.) Plaintiffs testified that the bus was traveling "straight," (ECF No. 67, Ex. H, Deposition of Chaim Adato on Oct. 1, 2009 ("Chaim Adato Dep.") at 24; Chana Adato Dep. at 87), but according to Dubignin, the road was hilly and winding with no shoulder, and was in a quiet residential area. (Dubignin Dep. at 54-55.) Dubignin said that he was not familiar with the road and that Livneh had chosen the road from a map. (*Id.* at 55-56.)

Plaintiffs did not identify any problems with the operation of the bus prior to the incident. Nor did plaintiffs know the speed of the bus immediately prior to the alleged incident and could not say whether it was accelerating or decelerating. Plaintiff testified that she felt safe on the bus and that "it was fine" prior to the incident. (Chana Adato Dep. at 78-79, 92, 276-77.) Dubignin testified that although he did

not know the exact speed limit on the road, he drove under the speed limit, "very slowly," because the road was "winding and hilly." (Dubignin Dep. at 58-59.) He said the bus was traveling at approximately twenty to twenty-five miles per hour at the time of the alleged incident. (*Id.* at 84.)

At the time of the alleged incident, Mrs. Adato was sitting alone on the back bench of seats at the rear of the bus, directly facing the aisle. (Chana Adato Dep. at 81.) Mr. Adato was seated in the left row in front of her, in the aisle seat. (Chaim Adato Dep. at 22.) Livneh was standing in the aisle next to the bus driver, talking to the tour group. (Chana Adato Dep. at 95, 275.)

Immediately prior to the alleged incident, neither plaintiffs, Livneh, nor Dubignin noticed any bumps, depressions or potholes in the road. (Livneh Dep. at 54; Dubignin Dep. at 59-60; Chana Adato Dep. at 100.) Dubignin testified that the road conditions were okay but hilly, and that because the bus is long, "when you go from up and down then back up there is a moment here when you kind of feel uneasy." (Dubignin Dep. at 60, 81, 83.) He recalled that once at a particular moment, the bus was "kind of shaking" up and down because of the hills. (*Id.* at 60-61, 81, 83.) Dubignin explained that the bus did not actually leave the road, but that it felt "like on a ship when you're riding, a wave." (*Id.* at 82.)

When he felt the bus shaking, Dubignin switched on the engine brake, a retardant that helps the brakes slow or stop the bus. (Dubignin Dep. at 62.) Dubignin testified that he switched the engine brake on whenever he drove on a difficult road. (*Id.* at 64-65.) A few minutes after Dubignin switched the engine brake on, Dubignin was informed by Livneh that a woman was feeling sick. (*Id.* at 66.)

Mrs. Adato does not know the speed of the bus or whether it was accelerating or slowing at the time of the incident. She did not remember or know what caused the alleged incident. (Chana Adato Dep. at 92-93, 100.) She testified that she only remembers that she was "flown away," but didn't remember anything else. (*Id.* at 94, 97, 100.) She testified that she saw "everybody" in the bus get "flown off." (*Id.* at 98, 113.) Immediately prior to the incident, Mrs. Adato did not feel the bus veer from left to right, nor did she hear a horn or brakes or feel the bus change speed, and does not know if the bus went over a pothole or depression. (*Id.* at 96-97, 100.) Mrs. Adato could not estimate how far out of her seat she came, but she said the upper left side of her back came into contact with the back of the seat in front of her. (*Id.* at 107.) She also testified that she hit the top of her head and the back of her neck, but could not remember what she came into contact with. (*Id.* at 108.) Mrs. Adato testified that she lost

consciousness, and when she regained consciousness she felt pain throughout her body, especially through the lower back and around the hips. (*Id.* at 111.)  She testified that she was screaming from the pain.  (*Id.* at 112.)

According to Mr. Adato, he did not see a bump in the road but he felt one, and he saw "everyone jump[] up."  (Chaim Adato Dep. at 30.)  He said that he jumped "[v]ery very high" because he was sitting in the back of the bus, which "is affected the most by the bumps."  (*Id.*)  When asked if his body actually left the seat cushion, Mr. Adato said that his "heart descended into [his] buttocks."  (*Id.*)  He then heard his wife calling for him and screaming about her back.  (*Id.* at 34.)

Dubignin did not recall hearing any yelling or commotion immediately before learning of the alleged incident from Livneh.  (Dubignin Dep. at 59.)  After Livneh informed him that a woman was not feeling well, Dubignin was unable to immediately stop the bus because there was no shoulder on the road.  (*Id.* at 66-67.)  After Livneh again told him that the woman was ill, Dubignin pulled the bus into the parking lot of a restaurant off the side of the road.  (*Id.* at 68.)  Livneh then called the police on his cell phone.  (*Id.* at 69.)  According to Livneh, no one else was injured.  (Livneh Dep. at 54.)

The police, firefighters, and an ambulance arrived on the scene.  (Chana Adato Dep. at 121.)  Mrs. Adato was carried

out of the bus and placed on a stretcher. (*Id.* at 121-22.)
She, accompanied by Mr. Adato, was taken to the hospital, where
she received pain medication and an x-ray of her hip. (*Id.* at
127, 133-34.) Mrs. Adato was released from the hospital that
same evening, after being told that her "back was turned over."
(*Id.* at 137.)

Plaintiffs returned by car to Brooklyn, New York,
where Mrs. Adato's daughter lives. (*Id.* at 139.) The car was
sent by the tour company, Discover. (ECF No. 69, Ex. F,
Deposition of Maya Trinquart-Azulai on October 22, 2009 at 32-
33; Chaim Adato Dep. at 50-51.) Mrs. Adato was still in pain
after arriving in Brooklyn and was taken by ambulance to
Lutheran Hospital. (Chana Adato Dep. at 141-42.)

At Lutheran Hospital, Mrs. Adato underwent a CAT scan
and was diagnosed with a fracture of the T-12 vertebra. (*Id.* at
143.) Upon discharge, she was prescribed pain medication and a
back brace for her lower back. (*Id.* at 149.) Mrs. Adato stayed
with her daughter for two weeks before returning to Israel.
(*Id.* at 152.) She was given permission by the airline's
physician to take the flight, and had to lie down the entire
trip; she also continued to wear the back brace. (*Id.* at 148,
153.)

About one day after returning to Israel, Mrs. Adato
saw Dr. Odessky, an orthopedic doctor who had previously treated

her for inflammation in the hands.  (Chana Adato Dep. at 153-54.)  She was referred to the hospital, where she was prescribed pain medication and a metal brace that stretched up to her neck. (*Id.* at 157.)  According to Mrs. Adato, she wore the brace for almost six months, returned to the hospital at least ten more times to receive treatment and continued to see Dr. Odessky. (*Id.* at 157-58.)  Mrs. Adato also underwent physical therapy. (*Id.* at 166-67.)

After having X-rays and MRIs performed on her neck, Mrs. Adato was told that she needed surgery for the herniated discs in her neck.  (*Id.* at 161.)  At the time of her deposition, Mrs. Adato was scheduled to meet with her physicians to discuss the neck surgery; she had not yet decided whether to undergo it.  (*Id.* at 163-64.)

Mrs. Adato was also treated for fibromyalgia and given medication for her condition.  (*Id.* at 174-76.)  According to Mrs. Adato, she had never been treated for fibromyalgia before the alleged incident occurred.  (*Id.* at 176.)

Mrs. Adato also saw Dr. Melnick, a dermatologist, for blue spots on her skin.  (*Id.* at 180.)  The dermatologist performed biopsies on the spots.  (*Id.* at 182.)  Mrs. Adato first testified that her skin condition was caused by unspecified injections failing to dissolve in her body, then testified the dermatologist believed the blue spots were caused

by the alleged accident and going through "certain trauma."
(*Id.* at 179, 181.) At the time of her deposition, Mrs. Adato
was waiting for the biopsy results. (*Id.* at 182.)

Mrs. Adato testified that she continues to use a back
brace in addition to other prescribed medical equipment to
perform her daily functions. (*Id.* at 194-95.) She uses a
device to help put on her socks, a device to reach shelves and
pick items up, an orthopedic bed, and orthopedic pillows. (*Id.*
at 194, 205-06.) She testified that she was on bed rest for
four to six months after returning to Israel. (*Id.* at 208-09.)
She has not returned to her previous job as a bank teller. (*Id.*
at 24, 210-11.)

Mrs. Adato alleges that she sustained the following
injuries as a result of the alleged incident: compression
fracture of T-12 vertebra, herniated disc at C5/C6, paresthesia
of the hands and face, hip contusion, and continuing pain in the
right thigh, all accompanied by pain and loss of motion. (ECF
No. 67, Ex. F, Plaintiff's Response to Interrogatories at 3,
dated Dec. 18, 2007.)

## DISCUSSION

### I.  Summary Judgment Standard

The court shall grant summary judgment only "if the
movant shows that there is no genuine dispute as to any material
fact and [that] the movant is entitled to judgment as a matter

11

of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A fact is material if it might affect the outcome of the suit under the governing law." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (citing *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Roe*, 542 F.3d at 35). Moreover, no genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

The moving party carries the burden of demonstrating "the absence of a genuine issue of material fact." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The court must construe the facts in the light most favorable to the nonmoving party and all reasonable inferences and ambiguities

must be resolved against the moving party.  *Id.*  Nevertheless, the nonmoving party may not rest merely on allegations or denials but must instead set out specific facts showing a genuine issue for trial.  *See id.* ("To defeat a summary judgment motion, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation.") (citations omitted).

## II.  Choice of Law

A federal court sitting in diversity will apply the choice of law rules of the forum state.  *See Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998).  However, if the parties "have agreed to the application of the forum law, that consent concludes the choice of law inquiry."  *Lawton v. Alitalia-Linee Aeree Italiane-Societa,* No. 97 Civ 4472, 1999 WL 632846, at *3 n.2 (Aug. 18, 1999) (quoting *American Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997); *see also Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 467 (2d Cir. 1995) ("Because both parties agree that New York cases are controlling, we shall assume that New York law governs this diversity action."); *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 206 n.1 (2d Cir. 1984) ("Following New York's choice of law principles, we apply New York law to this case . . .

because the parties have conducted the entire litigation on the assumption that New York law governs.").

Defendant MGV asserts that New York state law is appropriate to evaluate the present negligence action. (MGV Mem. at 7-10.) Plaintiffs agree that New York law should govern the instant dispute. (Pl. Opp. MGV at 6). Defendant Discover does not dispute the parties' assertion, and therefore is presumed to have consented to the application of New York law through its acquiescence. (*See generally* Discover Mem.) Moreover, all parties explicitly cite and rely upon New York law in their motion papers. *See Gunther v. Airtrain Holdings, Inc.*, No. 05 Civ. 2134, 2007 WL 193592, at *7 n.8 (S.D.N.Y. Jan. 26, 2007) ("The parties implicitly recognize that New York law governs this diversity action since both rely on New York precedent in their papers.").

Accordingly, this court will apply New York law in deciding the instant motion.

### III. Defendants MGV's and Dubignin's Motion for Summary Judgment

Defendants MGV and Dubignin argue that plaintiffs are unable to present any admissible evidence of negligence on their parts. (MGV Mem. at 10-14.) Specifically, they argue that plaintiffs have not presented any testimony or evidence to establish that the bus was operating at an excessive speed, that

the bus was being operated carelessly, recklessly or negligently at the time of plaintiff's alleged incident, or that the bus traveled over a bump, improperly paved portion of roadway, pothole or depression. (*Id.*) Further, defendants argue that plaintiffs have failed to offer any evidence or testimony sufficient to demonstrate that the movement of the bus at the time of the alleged incident was "unusual or violent," and "of a different class than the jerks and jolts commonly experienced in bus travel." (*Id.* at 12.)

In response, plaintiffs argue that the bus's movements were so extraordinary and violent as to be in a different class than jerks and jolts commonly experienced in bus travel. (Pl. Opp. MGV at 12-16.) Plaintiffs further argue that defendant MGV has spoliated documents, "preventing plaintiff from thoroughly investigating this matter, entitling plaintiff to an adverse inference." (Pl. Opp. MGV at 6.) The court will address plaintiffs' spoliation argument *infra*. For the reasons set forth below, defendants MGV's and Dubignin's motion for summary judgment is granted.

To establish a *prima facie* claim of negligence under New York law against a common carrier for injuries sustained by a passenger as a result of the movement of a vehicle, the plaintiff must establish that the movement consisted of a jerk or lurch that was "unusual or violent." *Urquhart v. New York*

*City Transit Auth.,* 623 N.Y.S.2d 838, 839 (1995). The movement
of the bus must be "of a different class than the jerks and
jolts commonly experienced in . . . bus travel and, therefore,
attributable to the negligence of defendant." *Id.*

At the time of the alleged incident, Mrs. Adato
testified that she was seated on a bench seat in the back row of
the bus and was not wearing a seatbelt. (Chana Adato Dep. at
79, 81.) At some point between Hershey, Pennsylvania and Amish
Country near or in Lancaster, Pennsylvania, on a two-lane road
that plaintiff could not identify, plaintiff testified that she
was "flown away" and "flown towards up." (*Id.* at 94.)
Plaintiff testified that she did know whether the bus was
speeding, and that immediately before the incident, she did not
hear a horn or screeching of tires, did not feel the bus veer to
the left or right, and did not feel the bus accelerate or
decelerate. (*Id.* at 96-97.) Plaintiff does not know what
caused her to "[fly] up." (*Id.* at 93, 97.) She testified that
she came up out of her seat and injured her upper and lower back
and neck. (Id. at 102-03, 110-11.) In addition, plaintiff's
husband testified that although he didn't see it, "[t]here was a
bump and everyone jumped up." (Chaim Adato Dep. at 30.)
Plaintiff did not provide any medical records to corroborate her
injuries, nor did she provide the testimony of any other
passenger, besides her husband, who was allegedly "flown away"

16

during the incident. Plaintiffs do not dispute the defendants'
evidence that the bus was operating very slowly, below the speed
limit at between 20-25 miles per hour with the engine brake
engaged and that it slightly shook only once in an up and down
direction.

Plaintiffs' testimony does not establish that the
bus's movement was a jerk or jolt that was so extraordinary and
violent as to be of a different class than those ordinarily
experienced on a bus. *See e.g.*, *Rayford v. Cnty. of
Westchester,* 873 N.Y.S.2d 187, 188 (2d Dep't 2009) (where the
bus's jerk caused plaintiff to fall from where she had been
standing next to the steps leading to the front door of the
vehicle and land on the steps with her legs partially hanging
out of the opened front door, the court found that plaintiff had
not established a *prima facie* case); *Tallant v. Grey Line N.Y.
Tours, Inc.*, 889 N.Y.S.2d 562, 562 (1st Dep't 2009) (in
considering a motion for summary judgment, where plaintiff
testified that the bus driver "slammed on the brakes" and
stopped the bus abruptly and the driver testified that he
applied "medium" pressure on the brakes, plaintiffs were unable
to demonstrate that the stop was unusual or violent); *cf.
Jenkins v. Westchester Cnty.*, 717 N.Y.S.2d 372, 373 (2d Dep't
2000) (finding a triable issue of fact where plaintiff "was
propelled from the front of the bus, head first into the rear

stairwell"); *Urquhart,* 623 N.Y.S.2d at 839 (finding that plaintiff had established a *prima facie* case where the sudden stop caused the plaintiff to fall to the floor and slide the entire length of the bus to the front, landing at the driver's feet); *Richter v. Trailways of New England, Inc.,* 282 N.Y.S.2d 148, 149 (2d Dep't 1967) (where plaintiff fractured her coccyx as a result of receiving a "terrible jolt" when a bus passed over a construction site, and where plaintiff's testimony about the severity of the jolt was corroborated by several other passengers.)

Moreover, as plaintiffs concede, it is not enough for plaintiffs to testify that the jerk or jolt was extraordinary or violent. (Pl. Opp. MGV at 15) ("It is clear that the plaintiff's testimony alone cannot serve as the only proof of the violent nature of the lurch.") Plaintiffs must supplement their testimony with other admissible evidence, such as medical records or other deposition testimony, to establish the severity of the jolt. *Urquhart,* 623 N.Y.S.2d at 839 ("Proof that the stop was unusual or violent must consist of more than a mere characterization of the stop in those terms by the plaintiff."). Here, the only evidence plaintiffs offer, other than their own testimony, is the testimony by Dubignin that, at one point, the bus "was kind of shaking." (Pl. Opp. MGV at 14 (citing Dubignin Dep. at 60).) Plaintiffs have not submitted any medical records

to corroborate Mrs. Adato's alleged injuries. The court does not find plaintiffs' evidence sufficient to establish a disputed issue of material fact. The fact that the bus may have been "shaking" does not establish that the bus made an extraordinary or unusual jerk or jolt. Without more than their own vague description of a "bump," plaintiffs have not raised a triable issue regarding the severity of the alleged incident. Consequently, defendants' motion for summary judgment is granted. *See, e.g., Green v. South Colonie Cent. School Dist.*, 81 A.D.3d 1139 (3d Dep't 2011) (affirming the trial court's decision to grant summary judgment to defendant bus operators where plaintiffs did not offer evidence challenging the defendants' testimony regarding the rate of deceleration which allegedly caused plaintiff's injuries.)

## IV. Plaintiffs' Cross-Motion for an Adverse Inference due to Spoliation

Plaintiffs cross-move for an adverse inference due to alleged spoliation of relevant evidence. Plaintiffs argue that defendant MGV was required to create, maintain and keep a log pursuant to Federal Department of Transportation regulations, that defendant MGV destroyed the log book with a culpable state of mind, and that the destroyed evidence was relevant to plaintiffs' claims such that a reasonable trier of fact would find that it would support the claims. (Pl. Opp. MGV at 8-12.)

In response, defendants argue that plaintiffs' cross-motion is procedurally barred by Local Rule 37.3 because plaintiffs did not request a pre-motion conference prior to making the motion, and because plaintiffs did not give defendants notice of their intention to make a cross-motion. Defendants further argue that plaintiffs have failed to establish (1) that MGV "ever possessed and/or destroyed and/or failed to preserve the so-called evidence in question" (ECF No. 68, Reply Memorandum to Defendants' Motion for Summary Judgment and in Opposition to Plaintiffs' Cross-Motion for Spoliation ("MGV Reply") at ¶ 9); (2) that MGV "willfully destroyed or negligently preserved" the subject logbook (*id.* at ¶ 14); and (3) that the logbook is "the only way to document the happening of the event" (*id.* at ¶ 18.)  For the reasons set forth below, plaintiffs' cross-motion for an adverse inference due to alleged spoliation is denied.

Initially, the court admonishes that plaintiffs should have moved for a pre-motion conference pursuant to Local Rule 37.3 prior to making their cross-motion.  Local Civil Rule 37.3 requires that attorneys file a letter requesting a pre-motion conference prior to filing any discovery motion.  *See* Local Rule 37.3.  Similarly, this court's individual practices require that attorneys file a letter requesting a pre-motion conference prior to filing any dispositive motion.  *See* Chambers Practices of

Judge Kiyo A. Matsumoto at ¶ IV(B).  The court, however, will not deny plaintiffs' cross-motion on this narrow procedural ground.  The parties in this case clearly did not carefully review the Federal Rules of Civil Procedure, the Local Rules, or the individual motion practices of this court, and the court strongly suggests that they do so in the future.  However, particularly given that the court is excusing defendant Discover's failure to submit a 56.1 Statement with its initial moving papers (*see infra*), it would not be fair to punish plaintiffs for a similar procedural error.  Accordingly, the court will consider the merits of plaintiffs' cross-motion for an adverse inference due to spoliation of evidence.

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).  Courts have broad discretion to impose sanctions to remedy harm resulting from spoliation, including an adverse inference jury instruction at trial.  *See, e.g., Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107-08 (2d Cir. 2002); *Reilly v. NatWest Markets Group Inc.*, 181 F.3d 253, 268 (2d Cir. 1999).  "[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence

had an obligation to preserve it at the time it was destroyed;
(2) that the records were destroyed 'with a culpable state of
mind'; and (3) that the destroyed evidence was 'relevant' to the
party's claim or defense such that a reasonable trier of fact
could find that it would support that claim or defense."
*Residential Funding Corp.*, 306 F.3d at 107 (citing *Byrnie v.
Town of Cromwell,* 243 F.3d 93, 107-12 (2d Cir. 2001)).

Plaintiffs' cross-motion is denied because plaintiffs
have not established that a logbook entry pertaining to
plaintiff's injury ever existed, let alone that it was
destroyed.  Plaintiffs argue, without citation to legal
authority, that "[b]ecause litigation was foreseeable . . . and
defendant knew that he was under an obligation pursuant to
Federal Department of Transportation regulations that he was to
create, maintain and keep a log, it was reasonably likely that
Plaintiff would request production of the log, Defendant MGV was
under a duty to preserve the logs."  (Pl. Opp. MGV at 8.)
Plaintiffs further argue, again without citation to legal
authority, that "it is within the realm of common sense that,
when confronted with a situation where a passenger is taken off
of a bus by a stretcher that the driver of the bus document the
occurrence, if only to protect himself from any legal inquiry
that may result."  (*Id.* at 10) (citation omitted.)  Defendant
MGV responds: (1) that plaintiffs have not taken MGV's

deposition; (2) that Dubignin did not testify that he recorded his every action in the logbook; and (3) that Dubignin did not testify that he was required to maintain a logbook by federal regulation, but rather was required to conduct pre-trip and post-trip inspections.  (MGV Reply at ¶¶ 9-11.)

The court finds that plaintiffs have not established that the subject evidence ever existed.  Dubignin, the only MGV witness deposed in this matter, testified that he was required, as part of his duties, to keep a logbook of "the jobs he need[ed] to do, what [he was] supposed to go [sic], timing . . . what [he needed] to verify when [he got] on the job or the bus to inspect the bus and everything."  (Dubignin Dep. at 20-21.) Dubignin further testified that he was not required to record in the logbook the roads that the bus traveled on when it went from one point to another in the course of a day.  (*Id.* at 26-27.) Finally, Dubignin testified that at the end of each month, he brought the log books to the company office or left them with the company.  (*Id.* at 22.)  The testimony establishes that Dubignin was required only to record his inspection of the bus in the logbook, but not that he was required to record any incidents with passengers therein nor that he actually recorded anything in a logbook on the date of plaintiff's incident. Furthermore, although both parties refer to "federal regulations," neither party cites to any such regulation that

would have obligated Dubignin, on behalf of MGV, to record plaintiff's incident in the logbook. Finally, in defendant MGV's response to plaintiffs' document request for copies of driver's logs and trip manifests, MGV stated that it "is not in possession of the information requested in this demand." (ECF No. 69, Ex. E, Response to Plaintiff's Combined Request for Documents, dated Oct. 9, 2009 at 3.) Therefore, because plaintiffs have not established that a record of plaintiff's accident in the logbook ever existed, the spoliation of evidence doctrine is inapplicable. *See, e.g., United States v. Perez-Velazquez*, 488 F. Supp. 2d 82, 85, 85 n.4 (D.P.R. 2007); *Kreyn v. Gateway Target*, No. 05-CIV-3175, 2006 WL 3732463 at *2 (E.D.N.Y. Dec. 17, 2006); *Riddle v. Liz Claiborne, Inc.*, No. 00-CIV-1374, 2003 WL 21976403 at *2 (S.D.N.Y. Aug. 19, 2003) (the lack of evidence that missing documents ever existed, and therefore were destroyed, was not spoliation).

Second, plaintiffs have not established that MGV destroyed the log book with a culpable state of mind. The "culpable state of mind factor is satisfied by a showing that the evidence was destroyed 'knowingly, even if without intent to [breach a duty to preserve it], or negligently.'" *Residential Funding Corp.*, 306 F.3d at 108 (citing *Byrnie,* 243 F.3d at 109). Not having established that MGV ever had a record of plaintiff's

incident in the logbook, plaintiffs have not established that
MGV destroyed the record with a culpable state of mind.

Third, plaintiffs have not established that the log
book is even relevant to plaintiffs' claims. "The burden falls
on the prejudiced party to produce some evidence suggesting that
a document or documents relevant to substantiating his claim
would have been included among the destroyed filed." *Byrnie,*
243 F.3d at 108. Plaintiffs argue that the logbook is relevant
because it is the "only way to document the happening of the
accident, the location where the driver pulled over and
conceivably, the names of responding police officers, ambulance
and fire companies." (Pl. Opp. MGV at 11.) Defendants respond,
and the court agrees, that to the contrary, there was deposition
testimony by several individuals concerning the events that gave
rise to this lawsuit. (MGV Reply at ¶ 18.) Furthermore,
plaintiffs have not presented any evidence that even if a
logbook entry of plaintiff's incident existed, it would contain
any information relevant to defendants' purported negligence.
As plaintiffs concede, any logbook entry that may have contained
"the location where the driver pulled over, the names of
responding police officers, ambulance and fire companies" would
not necessarily assist plaintiffs in establishing a *prima facie*
case of negligence against defendants. (MGV Reply at ¶ 19; Pl.
Opp. MGV at 11-12.) Moreover, plaintiffs have not explained why

they could not obtain information directly from the ambulance company that transported Mrs. Adato to the hospital.

Accordingly, plaintiffs' cross-motion for an adverse inference due to alleged spoliation of relevant evidence is denied.

## V. **Defendant Discover**

Defendant Discover also moves for summary judgment against plaintiffs' claims. Initially, plaintiffs urge the court to deny defendant Discover's motion based its failure to submit a 56.1 statement with its moving brief. The court declines to do so. Local Civil Rule 56.1 states:

> Upon any motion for summary judgment
> pursuant to Rule 56 of the Federal Rules of
> Civil Procedure, there shall be annexed to
> the notice of motion a separate, short and
> concise statement, in numbered paragraphs,
> of the material facts as to which the moving
> party contends there is no genuine issue to
> be tried. Failure to submit such a
> statement may constitute grounds for denial
> of the motion.

It is undisputed that defendant Discover failed to submit a 56.1 statement with its moving brief. (*See* ECF No. 72, Reeply [sic] Affirmation in Support of Defendant's Motion for Summary Judgment ("Discover Reply Aff.") at ¶ 3) (admitting the omission). Defendant Discover did, however, submit with its moving brief an "Affirmation," which included numbered paragraphs outlining the factual and procedural background of

the case and citations to admissible evidence. (ECF No. 71-2, Affirmation of Mary E. Maloney, at ¶¶ 3-16.) Furthermore, defendant Discover submitted a 56.1 statement with its reply brief. (See ECF No. 72-2, Local Rule 56.1(a) Statement of Material Facts to Support Defendant, Discover America's, Motion for Summary Judgment, filed Dec. 22, 2010.) The Second Circuit has stated that under these circumstances, the court may properly consider defendant's summary judgment even where it has omitted the 56.1 statement in the first instance. *See Tota v. Bentley,* 379 F. App'x 31, 31 (2d Cir. 2010) (finding no abuse of discretion where district court granted defendants' motion for judgment despite their failure to comply with Local Rule 56.1 because (1) defendants filed a 56.1 statement with their reply; (2) the statement was based on affidavits submitted with the defendants' moving papers, and (3) Local Rule 56.1 "permits – but does not require – the denial of a non-compliant motion for summary judgment"). Accordingly, the court declines to deny defendant Discover's motion on the ground that it failed to comply with Local Rule 56.1 in the first instance.

Defendant Discover argues that its role in providing a tour guide on board the bus, who directed the route of the bus driver does not rise to the level of control required to establish negligence. (*See generally* Discover Mem. at 2-8.) Specifically, defendant Discover argues that:

27

> [T]he tour guide did not retain actual
> control over the bus.  He did not tell the
> drive[r] what speed to travel, which lane to
> drive in, how to avoid obstacles, when to
> use a turn signal, how close or far away
> from other vehicles he should distance
> himself, how to adjust his mirrors, how high
> or low to place his sun visor, what notes to
> make in his log book required by the
> government, whether to fasten his seat belt,
> whether to wear gloves, how to adjust his
> seat, what pressure should be in the tires,
> whether all fluids were adequately
> maintained, inspect hoses, belts or any
> mechanical parts, when to go get gas or any
> of the other many elements of true operation
> and actual control of the bus.

(Discover Mem. at 8.)  Plaintiffs respond that the tour guide

"asked for the particular driver who was driving the bus that

day . . . [and] controlled where the bus went that day including

the road that they traveled on."  (Pl. Opp. Discover at 4.)

Under New York law, an independent travel or booking

agent cannot be held responsible for the negligence of its

principal, where the agent simply makes the reservation or

packages the tour.  *See, e.g., Russell v. Celebrity Cruises,

Inc.*, No. 96 Civ. 3328, 2000 WL 1013954 at *1 (S.D.N.Y. July 20,

2000) ("Where, as here, the travel agent's actions are limited

to making reservations or packaging tours, the companies

providing the actual services are considered to be independent

contractors, precluding liability against the travel agent for

any of the contractor's tortious activity."); *Aronov v. Bruins

Transp., Inc.*, 294 A.D.2d 522 (2d Dep't 2002) ("Where tour

participants are transported by an independent contractor, the tour operator is not responsible for an accident which occurs due to the negligence of the independent contractor.") (citation omitted); see also *Dorkin v. American Express Co.*, 345 N.Y.S.2d 891 (N.Y. Sup. Ct. 1993), *aff'd* 351 N.Y.S.2d 190 (3d Dep't 1974).

Thus, had the tour company here simply booked the tour for plaintiffs and had no further involvement in the tour, the tour company could not be found liable for plaintiff's injuries. Here, however, the tour company sent a tour guide to ride on the bus during the tour and direct the driver's route. This is a closer call, but for the reasons set forth below, the court finds that defendant Discover cannot be held liable for plaintiff's injuries.

An independent contract is "one, who, in exercising an independent employment, contracts to do certain work according to his own methods, and without being subject to the control of his employer, except as to the product or result of his work." *Dorkin,* 345 N.Y.S.2d at 894. Here, plaintiffs' only allegation regarding the control exercised by defendant Discover is that the tour guide Ilan Livneh ("Livneh") instructed the bus driver on which route to take. Indeed, the tour guide's testimony was that he was "the one who actually picked the roads" and told the driver Alexey Dubignin ("Dubignin") to "[make] a right, make a

left go straight . . . ." (Livneh Dep. at 38.)  Thus, in the selection of the route, the tour guide exercised limited control over the driver.[1]  Viewing the facts in the light most favorable to plaintiffs, the court finds that, even though Livneh directed the route the bus took, he did not exercise any control over the driver's actual operation of the vehicle that ultimately related to plaintiff's injury.  The tour guide did not tell the driver how to operate the bus, how fast to drive, or what precautions to take while driving.  (*See* Dugbinin Dep. at 85-87.)  Even if Dubignin had been speeding or negligently drove over a pothole, depression or speed bump, evidence of which is lacking in the record, these are not areas in which Livneh exercised control over Dubignin.  *See Lowy v. Heimann's Bus Tours Inc.*, 240 A.D.2d 548, 548-549 (2d Dep't 1997) ("[T]he tour operator, which chartered the bus which was involved in the accident, cannot be held liable for any alleged negligence on the part of the bus driver, as it had no control over the actual operation of the bus.").

This case is closely analogous to *Chainani v. Bd. of Educ.*, 639 N.Y.S.2d 971 (1995), in which a public school

---

[1] Even with respect to route selection, there are limits in the control that Liveh exercised over Dubignin.  Dubignin testified that Livneh could not tell him to drive down a dangerous road, on grass, or on a curb. (Dubignin Dept. at 85-86.)  Dubignin further testified that Livneh could not instruct him on what pressure to put in the tires, what fluid levels to put in the bus, what speed to drive, what distance to keep between vehicles. (*Id.* at 87.)

district contracted with independent bus companies to operate school buses. Although the school designated the bus routes and was "was active in some areas involving safety," the New York Court of Appeals found that it "did not retain control over every safety aspect of the manner in which the independent contractor operated the bus." *Id.* at 974. Accordingly, the court held that the school districts could not be found liable under either a direct or vicarious liability theory. Similarly here, although Discover, via Livneh, maintained control over one aspect of the bus's operation – the route it took – it did not exercise or retain control over any of the operational or safety aspects and cannot be held liable for plaintiff's injuries under either a direct or vicarious liability theory.[2]

Accordingly, no liability for the injury allegedly sustained by plaintiff can be attributed to defendant Discover and summary judgment is appropriate on the claims against Discover.

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are granted and plaintiffs' cross-motion for an

---

[2] Although there are certain circumstances in which a tour operator may be held liable for the negligence of its independent contractor, none apply here. The hirer or principal remains liable only where (1) the thing contracted to be done is unlawful; (2) where the acts performed create a public nuisance; (3) where a duty is imposed by statute or ordinance; (4) where the hirer is under a nondelegable duty to perform the services promised; (5) where the work to be performed is inherently dangerous and (6) where the principal or hirer assumes a specific duty by contract. *Dorkin,* 345 N.Y.S.2d at 894.

adverse inference due to alleged spoliation of relevant evidence is denied. The Clerk of Court is respectfully requested to enter judgment in favor of defendants MGV, Dubignin and Discover. By September 30, 2011, plaintiffs are ordered to show cause with a memorandum of law supported by any evidence they wish to present why defendant Gala Tours should not also be dismissed.

**SO ORDERED.**

Dated:     September 23, 2011
           Brooklyn, New York

                              _____/s/_____ _____
                              KIYO A. MATSUMOTO
                              United States District Judge
                              Eastern District of New York